George **EHLERT**, et al., Plaintiffs,

v.

Michael **SINGER**, et al., Defendants.

No. 98–2168–CIV–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 16, 1999.

Mark C. Gardy, Jill S. Abrams, Abbey, Gardy & Squitieri, LLP, New York City, Curtis V. Trinko, Timothy J. MacFall, Neal A. DeYoung, Law Offices of Curtis V. Trinko, New York City, Jonathan L. Alpert, Chris A. Barker, Scott J. Flint, Alpert, Barker & Rodems, P.A., Tampa, FL, for plaintiffs.

Steven E.M. Hartz, Christopher S. Carver, Lawrence Silverman, Akerman, Senterfitt & Eidson, Miami, FL, for Defendants Michael A. Singer, John H.Kang, Lee A. Robins, John P. Sessions, Frederick B. Karl, Jr., Raymond Kurzwell, Richard W. Mehrlich, Chris A. Peifer.

Daniel F. Molony, Michael P. Winter, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, M. Robert Thornton, David J. Onorato, King & Spalding, Atlanta, GA, for Defendants Donalson, Lufkin & Jebrette Securities Corp., Morgan Stanley & Co., Smith Barney Inc., Raymond James & Associates.

### ORDER ON MOTIONS TO DISMISS COMPLAINT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Motions to Dismiss Complaint (Dkt.50, 52) and response thereto (Dkt.58).

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint to determine whether it sets forth sufficient allegations to establish a claim for relief. Under *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a district court should not dismiss a complaint for failure to state a claim solely on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." Additionally, when deciding a motion to dismiss, a court must accept the truthfulness of well-pleaded facts and resolve them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Beck v. Deloitte et al.*, 144 F.3d 732, 735–36 (11th Cir.1998) (quoting *St. Joseph's Hosp. Inc. v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir. 1986)).

### BACKGROUND

Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a potential class consisting of all purchasers of Medical Manager Corporation (MMC) common stock. The offering in question commenced on or about April 23, 1998, and extended through August 5, 1998.

In February 1997, MMC became a public company through an initial public offering, with its common stock traded on the National Association of Securities Dealers Automated Quotation (NASDAQ). Defendants conducted a second public offering of 2.5 million MMC shares through a registration statement and prospectus dated April 23, 1998. Therein, MMC offered to sell an additional 1.5 million shares of common stock to the public for $30.00 per share. Defendant Michael Singer, MMC's Chairman of the Board and Chief Executive Officer, and Defendant Richard Mehrlich, an MMC director, each sold 500,000 shares of common stock in the offering.

Plaintiffs allege that the prospectus was materially misleading, primarily because it did not make certain disclosures, including MMC's intention to render its Version 8 product and related services obsolete through its sale of Version 9. In the prospectus, MMC stated that Version 9 is "year 2000 compliant," whereas its Version 8 contains a software defect known as the "year 2000 problem." Plaintiffs allege that because of MMC's decision to "curtail" support for Version 8, on August 5, 1998,

common stock prices fell from $26.75 per share to $20.375 per share, which caused Plaintiffs to purchase MMC's common stock at "artificially inflated prices."

## ANALYSIS

A. Section 10(b) of the Exchange Act and Rule 10b–5

Plaintiffs allege that Defendant MMC and the individual Defendants violated § 10(b) of the Exchange Act and Rule 10b–5 by making materially false and misleading statements or omissions in the prospectus. In order to maintain these claims, "a plaintiff must establish (1) a false statement or omission of material fact (2) made with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir.1997). Further, Plaintiff must satisfy the heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA). *See* 15 U.S.C. § 78u–4(b)(1) (1994). Specifically, the complaint must:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*Id.*

The case of *Harris v. Ivax, Corp.*, 182 F.3d 799 (11th Cir.1999), provides guidance on this issue. In *Harris*, the plaintiffs claimed that Ivax had violated both § 10(b) and Rule 10b–5 of the Securities Exchange Act. *See id.* at 802. The Eleventh Circuit affirmed the district court's decision to grant Ivax's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* at 801–02.

Amidst a period of financial jeopardy, Ivax issued three press releases, which formed the basis of the litigation. *See id.* at 802. Although the first two press releases recognized that Ivax was experiencing financial problems, a loss due to a goodwill writedown was never mentioned. *See id.* The third press release, however, announced a $104 million "reduction in the carrying value of the goodwill ascribed to certain … [Ivax] businesses. Neither of the previous two press releases mentioned the possibility of a goodwill writedown…." *Id.*

The plaintiffs' theory of liability, among other things, was that Ivax misled investors by omitting the possibility of a goodwill writedown. *See id.* The plaintiffs alleged that because the list omitted the expectation of a goodwill writedown, the entire list was misleading. *See id.* "The defendants moved to dismiss based on the safe-harbor provision and heightened pleading requirements added to the Securities and Exchange Act of 1934 by the PSLRA." *Id.*

The PSLRA amended the Securities Exchange Act of 1934 in two crucial ways:

> First, the act provides a safe harbor from liability for certain "forward-looking statements." … In that safe harbor, corporations and individual defendants may avoid liability for forward-looking statements that prove false if the statement is "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." Even if the forward-looking statement has no accompanying cautionary language, the plaintiff must prove that the defendant made the statement with "actual knowledge" that it was "false or misleading." … Second, the Act has introduced a heightened pleading requirement. Now a complaint seeking recovery for securities fraud must allege specific facts that raise a "strong inference" of "the required state of mind" on the part of officers responsible for an allegedly fraudulent statement.

*Id.* at 803. The court ultimately dismissed the complaint because it found the statements to be "forward-looking" and accom-

panied by adequate cautionary language. *See id.* at 807.

In this case, Plaintiffs make numerous allegations regarding materially false and misleading statements or omissions. This Court, however, can identify only four statements in the complaint that can be analyzed based on the standards set forth by the statute (i.e., plead with particularity). Those statements are as follows:

> Paragraph 38: "In the section of the Prospectus entitled *Competition,* defendants stated that the market for physician practice systems is highly competitive with a principal competitive factor being the quality of a providers customer support."
>
> Paragraph 39: "The Prospectus also stated, in the section entitled *Dependence of [sic] Principal Products,* that its commercial well-being was entirely based on the sales of its core product system: The Company currently derives a significant percentage of its revenue from sales of The Medical Manager core system. As a result, any event adversely affecting its core product could have a material adverse effect on the Company's results of operations, financial condition or business."
>
> Paragraph 40: "In the Prospectus's section entitled *Risks Related to Technological Change and New Product Development,* defendants stated: The Company's future success will depend, in part upon its ability to *enhance* its *current products,* to respond effectively to technological changes, to sell additional products to its existing client base and introduce new products and technologies that address the increasingly sophisticated needs of its clients." (Emphasis added).
>
> Paragraph 41: "In this section of the Prospectus, Defendants further stated: The Company is devoting significant resources to the development of enhancements to its existing products and the migration of existing products to new software platforms."

Specifically, Plaintiffs argue that those statements were misleading for the following reasons: (1) the prospectus failed to disclose material facts regarding its core product and the Year 2000 problem, (2) the prospectus contained material omissions concerning its Version 8 product, and (3) the prospectus contained material misrepresentations in its section on new product development. Material and misleading *omissions* can certainly fall within the forward-looking safe harbor. *See Harris,* 182 F.3d at 806. Defendants argue that statements made within the prospectus fall within PSLRA's safe harbor because it contained forward-looking statements accompanied by adequate cautionary language.

In order to assess these arguments, the Court must now turn to the exact language contained in the prospectus. The following are excerpts from the prospectus:

> **Risk of Product–Related Claims** Certain of the company's products provide applications that relate to financial records, patient medical records and treatment plans. Any failure of the Company's products to provide accurate, confidential and timely information, including failures which may be traceable to the Year 2000 issue, could result in product liability or breach of contract claims against the Company by its clients, their patients or others.... There can be no assurance that the Company will not be subject to product liability or breach of contract claims ...

> **Year 2000 Compliance** The Year 2000 issue relates to whether computer systems will properly recognize and process information relating to dates in and after the year 2000. These systems could fail or produce erroneous results if they cannot adequately process dates beyond the year 1999 and are not corrected. Significant uncertainty exists in the software industry concerning the potential consequences that may result from fail-

ure of software to adequately address the Year 2000 issue ...

**Proprietary (External) Software** The Year 2000 issue also creates risk for the Company from problems that may be experienced by customers of its software. While the Company believes that Version 9 of The Medical Manager practice management system, which was commercially released in November 1997, is Year 2000 compliant, prior versions of the system are not. The Company has encouraged users of pre-Version 9 versions of the Medical Manager software to upgrade to Version 9 in order to become Year 2000 compliant. If these or other customers experience significant difficulties as a result of the Year 2000 issue, or if the Company encounters difficulties in responding in a timely manner to customer requests to upgrade to Version 9, there could be a material adverse impact on the Company's results of operations, financial condition or business.

This Court holds that the statements contained within the prospectus are forward-looking. "Forward-looking statements include statements of future economic performance," *Harris,* 182 F.3d at 805, which is exactly what the statements in the prospectus include.

It is irrelevant that the prospectus contains both factual and forward-looking factors. The Eleventh Circuit's reasoning regarding this issue is not only binding, but highly persuasive: "[W]ere we to banish from the safe harbor lists that contain both factual and forward-looking factors, we would inhibit corporate officers from fully explaining their outlooks. Indeed, liability-conscious officers would be relegated to citing *only* ... forward-looking [factors]. That would hamper the communication that Congress sought to foster." *Id.* at 806–07.

Further, Defendants assert that "[t]he Prospectus is replete with cautionary language warning investors of the potential for customer lawsuits and other risks to the value of the securities posed by the

Year 2000 issue." This Court finds it abundantly clear that the prospectus informed investors of the potential misfortune that could befall MMC, satisfying the requirement for the safe harbor exclusion.

■ The statute only requires cautionary language to mention "important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i). It does not require the prospectus to list *all* factors that may influence a company's financial future. This Court agrees with Defendants' assertion that the forward-looking statements, contained within the prospectus, were accompanied by adequate cautionary language. Based on the foregoing statements, a reasonable investor had enough information to evaluate the risks associated with investing in MMC. Therefore, Plaintiffs' claims under § 10(B) of the Exchange Act and Rule 10b–5 are dismissed.

Even assuming, however, that the prospectus did not contain the adequate cautionary language, the prospectus still falls within the PSLRA's safe harbor because Plaintiffs did not allege facts sufficient to support a finding that any of the named Defendants actually knew that the statements were false at the time the forward-looking statements were made on April 23, 1998.

This Court agrees with Defendants regarding this issue: Under the PSLRA's heightened pleading standard, Plaintiffs may not simply allege scienter with nothing more, but must "state with particularity facts giving rise to a strong inference that the [D]efendant[s] acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

In support of their claims, Plaintiffs allege the following:

Each of Individual Defendants' and MMC's primary liability, scienter and controlling person liability, arises from the following facts: (i) the Individual Defendants were high level executives

and/or directors of the Company during the Class Period; (ii) the Individual Defendants, by virtue of their positions as directors and/or officers of MMC were privy to and participated in the preparation and/or approval of the Company's Prospectus; and (iii) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was material, false and misleading, as well as the Company's omission of material facts necessary in order to make the statements concerning MMC and its business operations and prospects, in light of the circumstances under which they were made, not misleading.

(Dkt.44)

Rather than stating with particularity facts indicating that Defendants acted with the required state of mind, Plaintiffs merely raise the possibility of such conduct. While pleading in the alternative is a generally accepted practice, Plaintiffs do not sufficiently state facts as required by the PSLRA. *See Clark v. TRO Learning,* 1998 WL 292382, *5, 1998 U.S.Dist. LEXIS 7989, *17 (N.D.Ill. May 19, 1998) (dismissing an almost identical claim for failure to plead "actual knowledge" because the plaintiffs stated that it was quite possible that defendants were merely reckless in failing to know that the information disseminated was false or misleading).

**B. Sections 11 and 12(a)(2) of the Exchange Act**

Plaintiffs also allege violations under § 11 and § 12(a)(2) of the Securities Act. Section 11 allows any purchaser of a security to file suit based on material misstatements, if any part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted a material fact required to be stated therein. *See* 15 U.S.C. § 77k(a). A § 11 claim can be asserted against every person who signed the prospectus, the issuer's officers and board of directors, and the underwriters of the securities offering. *See United States v. Naftalin,* 441 U.S.

768, 777–78, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979). Section 12 extends liability only "[1] to those persons who actually transfer title to the security and [2][to] those that successfully solicit the purchase." *Spivey Family Trust v. Board of Church et ano.,* 1995 WL 350269, *4, 1995 U.S.Dist. LEXIS 8089, *14 (M.D.Fla. June 8, 1995) (interpreting *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).

Section 11 and 12 claims, however, are barred if they are based on "forward looking statements" and the plaintiff "fails to prove" that the defendant made the statement with "actual knowledge" that it was misleading. 15 U.S.C. 77z–2(c)(1)(B); *see also In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1109 (D.Nev.1998). The PSLRA applies to *all* forward looking statements in the prospectus. *See id.*

> Although section 11 and 12(2) claims under the Securities Act normally do not require that Plaintiffs allege or prove scienter, the [PSLRA's] .... "safe harbor" applies to all private actions arising under the Securities Act based upon an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading.... Thus, for forward looking statements forming the basis of Plaintiffs' section 11 and 12(2) claims ... Plaintiffs must plead facts creating a strong inference that the Defendants knew that the statements were false or misleading when made.

*Id.*

Because this Court has already determined that the statements contained in the prospectus were "forward looking," and that Plaintiffs have failed to allege facts sufficient to support Plaintiffs' assertion that the statements were made with knowledge that the statements were misleading, the claims under § 11 and § 12(a)(2) are dismissed as well.

**C. Sections 15 and 20(a) of the Exchange Act**

Plaintiffs also allege violations under § 15 and § 20(a) of the Securities Act.

These claims are brought against the individual Defendants as "controlling persons" of MMC by virtue of their corporate positions. Plaintiffs allege that the individual Defendants are liable because their participation in and awareness of MMC's operations allowed individual Defendants to exercise influence and control over MMC, including the content and dissemination of the prospectus.

This Court agrees with Defendants' arguments regarding these claims: Because Plaintiffs failed to state claims under § 10(b), § 11, or § 12(a)(2), Plaintiffs' claims under § 15 and § 20(a), alleging "control person" liability, must be dismissed as well. *See Malin v. Ivax, Corp.,* 17 F.Supp.2d 1345, 1350 (S.D.Fla.1998) (reasoning that without a primary violation of the securities laws, there can be no secondary violation under § 20(a).); *see also Saslaw v. Askari,* 1997 WL 221208, *13 (S.D.N.Y. April 25, 1997) (holding that because the corporation was not liable under § 11 or § 12, there was no basis for the court to determine vicarious liability under § 15).

### D. Common Law Fraud

Because this Court has dismissed all claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law fraud claim and dismisses it as well. *See* 28 U.S.C. § 1367(c)(3) (1994).

For the reasons noted above, it is

**ORDERED** that Defendants' Motions to Dismiss Complaint (Dkt.50, 52) be **granted,** and the Clerk of Court shall enter judgment for Defendants.