**In re NOVEN PHARMACEUTICALS, INC. SECURITIES LITIGATION**

No. 01–4606–CIV–KING.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 20, 2002.

Samuel H. Rudman, Steven G. Schulman, Milberg Weiss Bershad Hynes & Lerach, New York, NY, Peter Harold Rachman, Emily Cornelia Komlossy, Goodkind Labaton Rudoff & Sucharow, Fort Lauderdale, Sandy A. Liebhard, Jeffrey M. Haber, Gregory Egleston, Matthew H. Hersch, Bernstein Liebhard & Lifshitz, New York, NY, Daniel E. Bacine, Barrack Rodos & Bacine, Philadelphia, PA, Maya Susan Saxena, Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach, Boca Raton, for Deborah A. Kaliser, on behalf of herslef and all others similarly situated, plaintiff.

David Charles Pollack, Richard Bryan Jackson, Jose Guillermo Sepulveda, Stearns Weaver Miller Weissler, Alhadeff & Sitterson, Stanley Howard Wakshlag, Brian Paul Miller, James Sammataro, Akerman Senterfitt & Eidson, Miami, for Noven Pharmaceutical, Inc., Robert C.

Strauss, James B. Messiry, Steven Sablot-sky, defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court on Defendants' Motions to Dismiss Consolidated Amended Class Action Complaint filed May 13, 2002. Plaintiff filed a Memorandum in Opposition to Defendants' Motions to Dismiss on June 24, 2002. Defendants filed their Replies on July 26, 2002.

### I. FACTUAL BACKGROUND

On April 11, 2002, Plaintiff Mary Rogers filed a two-count Consolidated Amended Class Action Complaint against Defendants Noven Pharmaceuticals ("Noven"), Robert C. Strauss ("Strauss"), James N. Messiry ("Messiry"), and Steven Sablotsky ("Sablotsky") alleging: (1) violations of Section 10(b) of the Exchange Act and Rule 10b–5 against all Defendants, and (2) violation of Section 20(a) of the Exchange Act against the individual Defendants. Plaintiff brought suit on behalf of herself and other "purchasers and acquirers of Noven common stock between March 27, 2001, and November 1, 2001, inclusive, (the "Class Period"), to recover damages caused by [D]efendants' violations of the Securities Exchange Act of 1934." (Am. Compl.¶ 1.) Noven is a pharmaceutical company that specializes in "drug delivery systems for use in hormone replacement therapy." (Am.Compl.¶ 2.) The individual Defendants are, or at one point during the Class Period were, Noven executives. (Am.Compl.¶¶ 12–15.)

According to the Amended Complaint, on November 6, 2000, Noven announced that it had entered into an exclusive licensing agreement (the "Agreement") with Novartis Pharma AG ("Novartis") in order to market Estradot™ and Estalis®, two of Noven's hormone replacement products, in Europe. (Am.Compl.¶ 3.) Plaintiff alleges that starting on March 27, 2001, the commencement of the Class Period, Noven issued a Form 10–Q, a 10–K, and two press releases that made the following misleading statements concerning its Agreement with Novartis:

(1) statements made in Defendants' March 27, 2001, Form 10–K for the fiscal year ending on December 31, 2000, discussing Novartis' obligations under the Agreement, including its obligation to distribute and market Noven's products; warning investors of the risks associated with investing in Noven; and discussing the importance of the Agreement on Noven's growth,[1]

---

1. The March 27, 2001, Form 10–K, pages 3, 13, and 14 state, in relevant part, as follows:
 [ ] Noven expects that Novogyne's product line will be expanded in the future, although no assurance can be given that Novogyne will add additional products or that such products will be successfully marketed .... (2000 10–K at 3.)
 [ ] On a long-term basis, Noven will seek to (I) expand its technology base and develop other drug delivery technologies, (ii) capitalize on the opportunity presented by its collaboration with Novartis through Novogyne by licensing certain of Noven's women's health products to Novogyne and by expanding Novogyne's product range beyond transdermal products, (iii) form new strategic alliances with other pharmaceutical companies and (iv) establish its own sales force to market certain of its independently developed products .... No assurance can be given that Noven will successfully implement all or part of its long-term strategy. (2000 10–K at 4–5.)
 [ ] In November 2000, Noven entered into an exclusive license agreement with Novartis AG .... There can be no assurance that Novartis AG will be successful in effecting the additional registrations of Estradot™

(2) statements made in various analysts' reports which, based upon Defendants' statements regarding the Agreement, positively discussed and encouraged investment in Noven,

(3) statements made in an August 2, 2001, press release commenting on the progression of the Agreement with Novar-

tis and reassuring investors of Novartis' commitment to Noven's products,[2]

(4) statements made in a August 10, 2001, Form 10–Q that revealed that orders for Noven's products were lower than anticipated and that Noven's revenue would be lower than previously expected.[3]

> or that Noven will receive the milestone payment. (2000 10–K at 7.)
>
> Noven expects that is will seek to retain manufacturing rights in any future licensing transactions, partly in an effort to safeguard its proprietary technology. There can be no assurance that Noven will be able to reach a favorable agreement in any particular transaction or collaborative arrangement. (2000 10–K at 13.)
>
> [ ] The markets for Noven's products are highly competitive. All drug delivery products being developed by Noven will face competition from both conventional forms of drug delivery ..., and possibly alternate forms of drug delivery.... In addition, some or all of the products being marketed or developed by Noven face, or will face, competition from other transdermal or transmucosal products that deliver the same drugs to treat the same indications. (2000 10–K at 14.)
>
> [ ] In a highly competitive marketplace and with evolving technology, there can be no assurance that additional product introductions or developments by others will not render Noven's products or technologies noncompetitive or obsolete. (2000 10–K at 14.)

2. The August 2, 2001, press release stated, in relevant part as set forth in paragraph 48 of Plaintiff's Amended Complaint, as follows:

> Our international business has not progressed as rapidly as we had hoped .... Novartis Pharma AF licenses our principal international products, Estalis® and Estradot ™, in most markets outside the U.S. We expected to receive significant orders for those products as Novartis Pharma purchased supply for planned international launches. To date, orders have been substantially less than we anticipated, and this will significantly affect our second half results.
>
> We believe that the failure to order at expected levels reflects Novartis Pharma's strategies relating to regulatory approvals

> and launch timing, not a lack of commitment to commercializing Noven's products. Several recent developments support this belief. In March of this year, our joint venture with Novartis Pharmaceuticals acquired Combipatch, the U.S. version of Estalis. As announced separately today, Novartis Pharma and Noven have entered into an agreement to develop line extensions to the Combipatch/Estalis product line. And Novartis Pharma continues to advance the European mutual recognition process for Estradot. We believe that these developments evidence Novartis Pharma's confidence and commitment to the long-term success of Estalis and Estradot in global markets.
>
> Product order issues aside, we consider our relationship with Novartis Pharma to be excellent. We are working with our colleagues there to better understand their regulatory and launch strategies, and to determine when additional orders will be received.

3. The August 10, 2001, Form 10–Q stated, in relevant part as set forth in paragraph 56 of Plaintiff's Amended Complaint, as follows:

> A decline in sales of Vivelle® and Vivelle–Dot ™ to Novogyne due to planned inventory reductions at Novogyne partially offset the increased sales of Noven's other products. License revenue increased $1.1 million, or 384%, primarily due to the amortization of license fees received in connection with the license of Estradot to Novartis AG in the fourth quarter of 2000 and the license of Combipatch to Novogyne in the first quarter of 2001. Product orders from Novartis AG for international markets have, to date, been substantially less than anticipated. Noven expects that the failure to receive these expected orders will significantly affect revenue for the second half of 2001 and that total revenues for the full year 2001 will be only modestly higher than the $42.9 million in total revenues reported for 2000.

According to Plaintiff's allegations, the above-quoted statements were false and misleading and therefore form the basis of Defendants' liability in this action because "Noven['s] management knew that Novartis was deliberately delaying marketing of Noven's products in order to ensure greater market share for Novartis' competing ESTRADERM® product." (Am. Compl.¶ 36.) Specifically, Plaintiff alleges as follows:

(a) Noven and the individual Defendants had ready access to Novartis' marketing plan with respect to the ESTRADOT™ license. For example, ... Novartis was required to provide Noven with a written marketing plan setting forth a detailed description of Novartis' strategies and business plan with respect to the marketing, distribution, and sale of each licensed product. In addition, at Noven's request, designated employees from Novartis were required to meet with Noven's senior management, ... to discuss Novartis' performance under the license agreement. Accordingly, [D]efendants knew that Novartis was not successfully marketing Noven's products, and Noven could not expect to generate significant revenues from the licensing agreement; and

(b) Novartis manufactured products that competed directly with ESTRADOT™. These products included ESTRADERM® and MENOREST®. As alleged above, according to former Noven sales and marketing employees, Novartis wanted to limit sales of ESTRADOT™ in order to maximize sales of ESTRADERM® and MENOREST®.

(Am.Compl.¶¶ 38(a) -(b).) Moreover, Plaintiff alleges that Noven employees spoke by telephone, met to discuss the progression of the Agreement and the difficulties encountered thereunder, and received monthly reports from Novartis which delineated information concerning "profit and loss and number of units sold."

(Am.Compl.¶¶ 35–37.) Plaintiff further alleges that "Defendants were also informed throughout the Class Period by sales and marketing personnel that Novartis was not generating European sales.... [and] that Novartis was deliberately delaying marketing of Noven's products in order to ensure greater market share for Novartis' competing ESTRADERM® product." (Am.Compl.¶ 36.) On May 13, 2002, Defendants filed two separate Motions to Dismiss alleging that (1) they are immune from liability because the alleged misleading statements are subject to the safe harbor provision of the law in that they are forward-looking and are accompanied by meaningful cautionary language; and (2) that the Amended Complaint "fails to allege, with particularity, and defendant-by-defendant, facts raising a strong inference that each misrepresentation or omission was made with 'actual knowledge' that it was false and misleading as expressly required by the Reform Act." (Defs. Noven, Strauss, and Messiry's Mot. to Dismiss at 2.) Additionally, Defendant Sablotsky argues in his separate Motion to Dismiss that Plaintiff's Amended Complaint should be dismissed because Sablotsky is not liable for "any of the alleged misleading statements made after his departure, and [he is] not a 'controlling person' within the meaning of Section 20(a) of The Exchange Act." (Def. Sablotsky's Mot. to Dismiss at 4.)

## II. STANDARD OF REVIEW

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.' " *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986) (quoting *Conley*

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami,* 805 F.2d 962, 965 (11th Cir.1986) (citation omitted). However, regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") was specifically enacted to curb "abusive securities litigation [by] permit[ting] the dismissal of frivolous cases at the earliest feasible stage of the litigation." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir.1999). Pursuant to the PSLRA, upon a motion to dismiss a court may examine the disclosures being attacked within the context of the entire document from which the statement was made. 15 U.S.C. § 78u–5(e); *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999)

## III. ANALYSIS

To establish a prima facie case for securities fraud pursuant to Section 10(b) of the Exchange Act and Rule 10b–5, the plaintiff must allege facts showing the following: "(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which [p]laintiff relied, (5) that proximately caused the injury." *Holmes v. Baker,* 166 F.Supp.2d 1362, 1373 (S.D.Fla.2001) (citing *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir.1989) (en banc)). To survive a motion to dismiss, the fraud allegations in a complaint must "be stated with particularity" pursuant to

Federal Rule of Civil Procedure 9(b). The PSLRA also mandates that allegations of fraud brought under that statute must meet a heightened pleading requirement. 15 U.S.C. § 78u–4(b). Specifically, the PSLRA sets forth the following requirements:

(1) . . . the complaint shall specify each statements alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed . . . .

(2) . . . the complaint shall with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(1) and (2).

In their respective Motions, Defendants argue that the PSLRA's safe harbor provisions apply and render them immune from liability and, alternatively, that Plaintiff's allegations do not meet the heightened pleading standards set forth above. To determine whether Defendants' statements are protected by the PSLRA's safe harbor provision, the Court must ascertain first, whether Defendants' statements are forward-looking, and second, whether the safe-harbor provision for forward-looking statements applies. The safe-harbor provision applies where (1) the forward-looking statements are accompanied by "meaningful cautionary language," or (2) "the plaintiff fails to plead with particularity facts giving rise to a strong inference that the defendants had actual knowledge of the falsity of their statements when made." *In re Columbia Labs., Inc. Sec. Litig.,* 144 F.Supp.2d 1362, 1367–68 (S.D.Fla.2001) (citing 15 U.S.C. § 78u–5(c)(1)(B)(ii)(II) and *Harris,* 182 F.3d at 803.)

## A. Forward–Looking Statements

 Pursuant to the PSLRA, "[f]orward-looking statements include: (1) a statement containing a projection of revenues; (2) a statement of the plans and objections of management for future operations, including plans or objective relating to the products or services of the issuer; (3) a statement of future economic performance; and (4) any statements of the assumptions underlying or relating to the aforementioned statements." *In re Columbia Labs.*, 144 F.Supp.2d at 1368 (citing 15 U.S.C. § 78u–5(*l*)(1); *Harris v. Ivax Corp.*, 182 F.3d 799, 804 (11th Cir. 1999)). When determining whether a statement is forward-looking, the Court must consider the statements at issue in the context of the entire document. *Harris*, 182 F.3d at 805. If a document contains both forward-looking and not forward-looking statements, courts are to treat them as forward-looking. *Id.* at 806.

Moreover, the Eleventh Circuit has noted that "a material and misleading omission can fall within the forward-looking safe harbor." *Harris*, 182 F.3d at 806.

The Court finds that the following statements made during the Class Period are forward-looking and are covered by the PSLRA's safe harbor provision because they relate to Defendants' plans, expectations, and optimism concerning the implementation and the success of the Agreement with Novartis:

● "Noven expects to be dependent.... There can be no assurance that Noven's product will successfully compete...." [4]

● "Noven expects that the failure to receive these expected orders will significantly affect revenue." [5]

● "We expected to receive significant orders.... [O]rders have been substantially less than we anticipated, and this will significantly affect our second half results.... We believe that these developments evidence Novartis Pharma's confidence and commitment to the long-term success of Estalis and Estradot in global markets[;]" [6]

● "Novartis is now expected to advance the Mutual Recognition Procedure process to get the product broadly approved in Europe.... This should bode well for the long-term growth of Noven's hormone replacement therapy business." [7]

● "Management announced that they will host the national sales launch meeting next week and start aggressively marketing this $20 million product... We expect this product to be a significant engine of profit growth....[;]" [8]

● "European regulatory filings for Estradot have been completed and European approval should come in late 2001.... We expect near-term income to be driven by Novogyne...." [9]

● "Estalis has now been shipped to more than 15 countries with launches expected to continue by partner Novartis throughout the remainder of this year and into 2002.... [T]he Company expects to commence initial shipments to Novartis in late 2001 and into 2002, pending pan-European approval, which should occur during the second half of this year." [10]

---

4. The 2000 Form 10–K.

5. The 2001 Form 10–Q.

6. August 2, 2001, Press Release.

7. April 30, 2001, Press Release.

8. May 1, 2001, Deutsche Banc Report by Alex Brown.

9. August 3, 2001, Leerink Swann & Company Report.

10. May 9, 2001, Deutsche Bank Report.

## B. Applicability of the PSLRA's Safe Harbor Provision

The safe harbor provision applies in two situations: (1) where the forward-looking statements are accompanied by "meaningful cautionary language," *or* (2) where the plaintiff fails to plead with sufficient particularity facts that give rise to a strong inference that defendants had actual knowledge of the falsity of their statements when the statements were made. Having analyzed the parties' pleadings and attached exhibits, the Court finds for the reasons discussed below that the statements were not accompanied by "meaningful cautionary language." However, because Plaintiff fails to plead facts giving rise to a strong inference that Defendants had actual knowledge that their statements were false with sufficient particularity as required by the PSLRA, the Court finds that the safe harbor provision *does* apply. Plaintiff's Amended Complaint must therefore be dismissed.

### 1. Statements Are Not Accompanied by Meaningful Cautionary Language

■ To qualify for protection under the safe harbor provision, "meaningful cautionary language must be more than mere boilerplate language." *In re Columbia Labs.*, 144 F.Supp.2d at 1368–69 (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir.1999)). Although the Eleventh Circuit has taken a liberal approach by holding that the cautionary language need not explicitly refer to the risk that ultimately occurred, the cautionary language must warn of "risks of a significance similar to that actually realized" to put investors on notice and allow them to make an intelligent decision. *Harris*, 182 F.3d at 807. "To be 'meaningful' the statements must identify important factors that could cause results to differ materially from those in the 'forward-looking statement.'"

*In re Columbia Labs.*, 144 F.Supp.2d at 1369 (citing *Harris*, 182 F.3d at 803).

In this case, Plaintiff alleges that Defendants knew that "Novartis was deliberately delaying marketing of Noven's products in order to ensure greater market share for Novartis' competing Estraderm product" and that they withheld that information from investors. (Am.Compl.¶ 36.) Thus, for the cautionary language to be meaningful, it must warn of a "risk[ ] of a significance similar to that actually realized." Here, because the risk involved competition from the distributor responsible for marketing the product, rather than from other competitors in the market, the warning must have some correlation to that fact.

Defendants argue that the statements made before and during the Class Period adequately warned investors about the risks associated with the Agreement Defendants had with Novartis. In support thereof, Defendants quote language from the 2000 10–K that generally warned investors that "the 'failure of any of these parties to market Noven's products successfully' would have a material adverse effect on Noven's business and operations,' and cautioned that in the short term, its 'growth depends in part on Novartis' launch plans and marketing efforts with respect to Estalis and Estradot,' and 'the scope and success of those efforts are outside the control of Noven.'" (Defs. Noven's, Strauss and Messiry's Mot. to Dismiss at 17.) In addition, Defendants cite to the warning in the August 2, 2001, press release concerning "risks in its international business and it reliance on things not in its control." (Defs. Noven's, Strauss and Messiry's Mot. to Dismiss at 19.) Finally, Defendants cite to the following language in the 2001 Form 10–Q to support their argument that the statements at issue in-

cluded the necessary "meaningful cautionary language:"

> These statements are based on Noven's current expectations and belief concerning future events but are subject to risks and uncertainties that could cause actual results to differ materially from those expressed therein.... [T]he following important factors, among others, could cause Noven's actual results to differ materially from those expressed in any forward-looking statements: Noven's dependence on strategic alliances and its relationships with its licensees, risks associated with clinical trials and product development, including any future generations of Noven's combination estrogen/progestin patch, the recent shortfall in international product orders expected to be received from Novartis, the ability of Novogyne to generate sufficient operating income to service the obligations owing to Aventis with respect to the Combipatch ™ transaction, fluctuations in quarterly revenue and research and development expenses, the effect of changes in taxation, as well as economic, competitive, government and technological factors affecting Noven's operations, markets, products and prices. Noven does not undertake to update any of these forward-looking statements or to announce the results of any revisions to these forward-looking statements expect as required by law....
>
> [R]evenues from product sales to licensees may fluctuate from quarter to quarter depending on various factors not in Noven's control, including but not limited to, the marketing efforts of each licensee, the inventory requirements of each licensee, the impact of competitive products, the timing and scope of Estalis ® and Estradot ™ launches by Novartis AG, the product pricing of each licensee and the timing of certain royalty reconciliations and payment under Noven's license agreements.

(Defs. Noven's, Strauss and Messiry's Mot. to Dismiss at 19–20.) However, the Court finds that this general language regarding competition does not address the specific risks that Plaintiff alleges Defendants knew about; namely, that Novartis was directly competing with the Noven product it was obliged to distribute. Therefore, these statements are not insulated from liability under the first prong of the safe harbor provision.

**2. Plaintiff Fails to Plead with Particularity that Defendants had Actual Knowledge of the Falsity of their Statements when Made**

■ In the alternative, Defendants argue that the Amended Complaint should be dismissed because Plaintiff fails to plead with particularity facts giving rise to a strong inference that Defendants had actual knowledge of the falsity of their statements. As previously discussed, the PSLRA sets forth a heightened pleading requirement. The allegations regarding scienter "must, with respect to each alleged act or omission, 'state with particularity facts giving rise to the strong inference that the defendant acted with the required state of mind.'" *In re Amylin Pharmaceuticals. Inc. Sec. Litig.*, 2002 WL 31520051 at *3 (S.D.Fla. Oct.10, 2002) (quoting 15 U.S.C. § 78u–4(b)(2)). "If the complaint does not satisfy these pleading requirements, the court, upon motion of the defendant, must dismiss the complaint." *Id.* (citing 15 U.S.C. § 78u–4(b)(3)(A)).

The Amended Complaint alleges that "[a]ccording to a former senior Noven employee responsible for the sales and marketing" Noven personnel were aware of the problems arising in regard to the Agreement. (Am.Compl.¶ 34.) Specifically, Plaintiff sets forth the following facts in support of the allegation that Defendants

knew that Novartis was not committed to the Agreement:

> • Novartis refused to expend funds to provide the pharmaceutical representatives with handheld computer equipment needed to obtain physicians' signatures when leaving product samples, as well as track sample inventory and usage history.[11]
>
> • [ ] Noven marketing personnel, including marketing manager Venie Brill, ... spoke by telephone about the absence and/or significant amount of European sales of VIVELLE–DOT® (i.e., the U.S. name for ESTRADOT™) by Novartis and how that fact would affect the Novogyne joint venture. . . . [M]arketing personnel from both companies, including Len Maniscalco, Executive Director of Finance for Novogyne, and Novartis employee Cornelius Sailor, spoke frequently by telephone regarding, inter alia, the difficulties encountered by Noven marketing personnel in working with their marketing counterparts at Novartis, who were obstructing Noven's marketing efforts. . . . [K]ey senior [c]ompany employees and senior Novartis personnel also met at Noven's offices in Miami, Florida, and Novogyne's offices in Edison, New Jersey, as many as six times per year during the Class Period to discuss, among other things, Novartis' marketing efforts under the licensing agreement. Noven senior manager W. Neil Jones, Novogyne's Maniscalco, and Novartis' Sailor attended these meetings. Jones reported directly to [D]efendant Strauss. Novartis' obligations under the licensing agreement were also discussed during telephone conversations between Maniscalco and Sailor. According to the former sales and marketing employee who overheard some of these conversations, Maniscalco and Sailor specifically discussed the lack of European sales of VIVELLE–DOT® by Novartis. Noven's accounting personnel also communicated daily by telephone with Novartis' accounting department to discuss the lack of European sales of ESTRADOT™ and ESTALIS®.[12]

In addition, Plaintiff references "monthly reports" prepared by Novartis that allegedly "included information concerning, among other things, profit and loss and number of units sold[,]" and that, as a result of these reports, "Noven's senior executive, including the Individual Defendants, ... were aware that Novartis was failing to meet its obligations under the joint marketing agreement." (Am. Compl.¶ 37.) Finally, Plaintiff also mentions a marketing plan that Novartis was required to produce and the ability of Noven employees to request a meeting with Novartis management to discuss Novartis' performance under the Agreement. (Am. Compl.¶ 38.)

A complaint need not name confidential sources so long as other facts in the complaint " 'provide an adequate basis for believing that the defendants' statements were false.' " *Holmes,* 166 F.Supp.2d at 1380 (quoting *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir.2000)). In *Holmes,* the court held that although "there are some statements contained in the complaint that appear to have come from confidential sources[,] . . . many of these statements are supported by latter facts providing an adequate basis for believing that [the defendant] committed fraud." *Id.* at 1381. Here, as in *Holmes,* Plaintiff repeatedly refers to a confidential source identified as a "former senior Noven marketing employee" as the source of the information quoted above. (Am.Compl.¶¶ 34–37.) However, unlike in *Holmes,* this Court finds that the

---

11. Pl.'s Am. Compl. ¶ 34.

12. Pl.'s Am. Compl. ¶ 35.

facts set forth in the Amended Complaint do not provide an adequate basis for believing that Defendants committed fraud.

Plaintiff's allegations are conclusory and fail to adequately indicate that Defendants knew the falsity of their statements at the time they were made. For example, the Amended Complaint refers to monthly reports but does not indicate what information was included in those reports. Therefore, Plaintiff does not allege whether Novartis actually disclosed to Defendants their failure to market Noven's product. Plaintiff alleges that Noven failed to disclose to the public the information regarding sales under the Agreement that Novartis disclosed in the reports. However, without referencing what was actually included in those reports, Plaintiff did not properly allege that Novartis disclosed the sales information to Noven. The other facts in the Amended Complaint standing alone, without reference to the contents of the agreement, also fail to establish with sufficient particularity a strong inference that Defendants acted with actual knowledge of the falsity of their statements.

Moreover, Plaintiff refers to meetings at Noven's offices and Novartis' offices and alleges that those meetings occurred "as many as six times per year during the Class Period." (Am.Compl.¶ 35.) However, Plaintiff fails to allege with sufficient particularity how many meetings occurred, when they occurred, and what was discussed in those meetings. Finally, although Plaintiff refers to a written marketing plan that Novartis was required to deliver to Noven, Plaintiff does not allege the content of that plan, whether the plan was delivered, and to whom. Therefore, because Plaintiff's Amended Complaint fails to plead with sufficient particularity that Defendant acted with the required state of mind necessary to show scienter,

the second prong of the safe harbor provision applies.

## C. Control Person Liability Pursuant to Section 20(a) of the Exchange Act

Cases have held that "[i]n the absence of a viable Section 10(b) or Rule 10b–5 claim, an action against controlling individuals pursuant to Section 20(a) cannot be maintained." *In re Rexall Sundown, Inc. Sec. Litig.*, 2000 WL 33539428, *5 (S.D.Fla. Mar.29, 2000) (citing *Ehlert v. Singer*, 1999 WL 1427735, *6 (M.D.Fla. Dec.16, 1999)). Therefore, because this Court has found that Plaintiff has not plead a viable claim for violations of Section 10(b) and Rule 10b–5, the Court need not consider the parties argument regarding Count II of Plaintiff's Amended Complaint.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Noven, Strauss, Messiry, and Sablotsky's Motions to Dismiss be, and the same is hereby GRANTED with leave to amend within 30 days in accordance with the pleading requirements set forth in 15 U.S.C. § 78u–4(b).