**In re ANDRX CORPORATION, INC.,
Taztia XT Securities Litigation.**

No. 02–60410–CIV.

United States District Court,
S.D. Florida.

Dec. 3, 2003.

Jules Brody, Stull, Stull & Brody, New York City, Jack Reise, Cauley, Geller, Bowman & Rudman, Howard Kelly Coates, Jr., Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, Jay Saltzman, Schoengold PC, New York City, Deborah R. Gross, Bernard M. Gross, Philadelphia, PA, Kenneth J. Vianale, Vianale & Vianale, Boca Raton, FL, for plaintiffs.

Tracy Ann Nichols, Louise McAlpin Brais, Holland & Knight, Miami, FL, Andrew L. Barroway, Schiffrin & Barroway, Bala Cynwyd, PA, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judg-

ment, filed on May 5, 2003; Defendants' Request for Oral Argument on Defendants' Motion for Summary Judgment, also filed on May 5, 2003.

THE COURT has considered the motion, the request and the pertinent portions of the record, and is otherwise fully advised in the premises. Plaintiffs filed this action on March 22, 2002, alleging violations of Section 10(b) of the Securities and Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder (count I), and Section 20(a) of the Exchange Act (count II). Defendants filed the present motion for summary judgment ("Motion") on May 5, 2003, arguing that they are entitled to summary judgment relying on the "truth on the market" doctrine, and arguing that the alleged misstatement which underlies this action had no material impact on Andrx's stock price and was not the proximate cause of any of Plaintiffs' losses. On July 11, 2003, Plaintiffs filed a response to the motion ("Response"), to which Defendants replied on August 15, 2003 ("Reply"). The matter is ripe for disposition.

### STATEMENT OF FACTS [1]

This is a class action brought by Plaintiffs on March 22, 2002, on behalf of purchasers of common stock of Andrx Corporation, Inc. ("Andrx") between January 9, 2002 and February 21, 2002 ("Class Period").[2] *See* Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Second Amended Complaint") at 1. The Defendants are Andrx and Elliot Hahn who, at all times

---

**1.** Pursuant to S.D. Fla. L.R. 7.5(D), "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the opposing party's statement...."

**2.** In Plaintiffs' Consolidated Amended Class Action Complaint, filed with this Court on July 25, 2002, Plaintiffs attempted to state a cause of action on behalf of those individuals

relevant to this action, served as Andrx's President.[3] *See id.* at ¶ 18. Andrx developed, at all relevant times, "bioequivalent versions of selected controlled-release brand name pharmaceuticals and brand name - controlled-release formulations of existing immediate-release or controlled-release drugs." *Id.* at ¶ 16.

*The Approval Process and the Litigation*

One such drug is the blood pressure medication Taztia, a generic version of the non-generic Tiazac made by Biovail. *See id.* at ¶ 1. Approval from the Food and Drug Administration ("FDA") is required before a bioequivalent version of a brand-name drug can be marketed, and the FDA approval process is begun by filing an Abbreviated New Drug Application ("ANDA") with the FDA. *See* Joint Scheduling and Status Report ("Joint Report", DE 72) at 2–3. An ANDA applicant is required to provide a certification-known as a Paragraph IV certification-that its product does not infringe upon a patent which is listed by a New Drug Application ("NDA") owner in the FDA's Approved Drug products with Therapeutic Equivalence Evaluation Book (the "Orange Book"), or that such patent is invalid or unenforceable. *See id.* at 3. An NDA owner can then file a lawsuit challenging the patent representations asserted in the ANDA. *See id.* If such a lawsuit is filed, the FDA may review and tentatively approve the ANDA, but cannot make the

marketing approval effective until the sooner of: 1) the entry of judgment in the patent action; 2) the passing of thirty months from the date the patent holder received the Paragraph IV certification; or 3) the expiration of the patent. *See id.*

In June 1998, Andrx submitted an ANDA for Taztia, its generic version of Biovail's Tiazac. *See id.* In response to Andrx's ANDA submission, Biovail filed a lawsuit against Andrx claiming that Taztia infringed on Biovail's '791 patent. *See* Motion at 4. On March 6, 2000, the District Court ruled in favor of Andrx, finding that Taztia did not infringe upon Biovail's '791 patent. *See id.* at 5. On September 29, 2000, the FDA issued a letter tentatively approving Taztia. *See id.* Biovail appealed the District Court's decision regarding the '791 patent. *See id.*

During the pendency of the appeal, Biovail listed its '463 patent in the Orange Book and again sued Andrx for patent violations. *See id.* On February 13, 2001, the Court of Appeals upheld the District Court's decision that Taztia did not infringe Biovail's '791 patent. *See id.* On May 14, 2001, the FDA granted a second tentative approval of Taztia. *See id.* Then, on September 19, 2001, the District Court entered an Order in favor of Andrx, finding that the thirty-month statutory stay would end on September 27, 2001. *See* Motion at 5; *Andrx Pharm., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1374 (Fed.

who purchased Andrx common stock between April 30, 2001 and February 21, 2002, premised upon ten purported misstatements occurring during the class period. *See* DE 34. On November 4, 2002, this Court granted in part Defendants' motion to dismiss, finding that nine of the ten statements were forward-looking and thus protected by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. *See* DE 69. Accordingly, Plaintiffs' Second Amended Complaint is

premised on one single alleged misrepresentation by Defendant Hahn as reported by the *Dow Jones News Service* on January 9, 2002. *See* Second Amended Complaint.

3. The other individual defendant named in the Second Amended Complaint, Alan P. Cohen, was dismissed from the case on February 21, 2003. *See* Order of Dismissal as to Defendant Cohen (DE 85).

Cir.2002). Biovail appealed that Order. *See* Motion at 5.

*The Public Statements*

On September 21, 2001, Biovail issued a press release which commented on the District Court's September 19, 2001 decision and which added: "[m]oreover, Biovail believes that data submitted to FDA concerning the performance of Andrx' product shows conclusively that Andrx' product is not bioequivalent with Tiazac(R). Thus, under governing FDA regulations, FDA should not be permitted to approve Andrx' product in its current form." *See* Motion at Ex. 1.

On September 28, 2001, Andrx issued its own press release which stated in relevant part:

> Andrx Group (Nasdaq: ADRX) announced today that, late on September 26, the Federal District Court in the Southern District of Florida denied Biovail Corporation's motions to reconsider its decision of September 19 and to stay (e.g., delay the effectiveness of) that portion of its order that shortened the Hatch–Waxman waiting period for Andrx's generic version of Tiazac(R). However, the district court moved the stay expiration date from September 27, to October 1, 2001, and agreed to both parties' requests to allow immediate appellate review of various rulings, including the shortening of the waiting period. Biovail has already filed a notice of appeal with the Court of Appeals for the Federal Circuit, and is seeking a stay of the district court's ruling shortening the waiting period. Andrx intends to oppose that motion. In anticipation of the court authorized approval date, FDA has for the first time advised Andrx that, while certain dosage strengths of Andrx's generic version of Tiazac are ready for approval once the statutory stay is lifted, FDA needs additional information relating to the other strengths in order to make its approval determination. Andrx is providing documentation to address FDA's requests.

> Given that, within the next 60 days, Andrx anticipates receiving a district court ruling on its motion for summary judgment of the underlying patent infringement issues and FDA approval of all strengths of its product, Andrx at this point does not intend to commence marketing any strength of its generic Tiazac product until both of these matters are resolved.

*See id.* at Ex. 2. That same day, commentators and analysts repeated Andrx's announcements regarding the status of its litigation with Biovail and the FDA's request for additional information on certain dosage strengths before making its approval determination as follows:

● The *Dow Jones News Service* reported that "the FDA has advised Andrx that, while certain dosage strengths of Andrx's generic version of Tiazac are ready for approval once the statutory stay is lifted, the FDA needs additional information relating to the other strengths in order to make its approval determination. Andrx is providing documentation to address FDA's requests."

*See id.* at Ex. 3.

● Merrill Lynch Global Securities Research issued a report stating:

> Technically speaking, the FDA would be able to issue a final approval of Andrx' generic version of Tiazac after October 4th. However, Andrx announced today that the FDA has

asked the company to submit more information on generic Tiazac prior to making a final approval decision on all doses. Andrx is in the process of providing the information. The FDA's request is a result of an argument Biovail has made that certain dosage strengths of Andrx' generic are not bioequivalent to the brand.

Andrx indicated that it expects within 60 days (1) the district court filing on its motion for summary judgment of the underlying patent infringement issue, and (2) FDA approval of all strengths of its generic version of Tiazac. If this occurs, a 4Q launch would be possible for Andrx.

We believe that in a worst case scenario, FDA would require Andrx to conduct an additional bioequivalence study. In that case, we believe Andrx would be able to complete the study and submit the data by year-end, and that the FDA would issue an approval by mid–2002.

*See id.* at Ex. 4.

● Banc of America Securities issued the following report:

Andrx indicated that the FDA has advised Andrx that, while certain strengths of its generic Tiazac are ready for approval, it needs additional information relating to other strengths in order to make its approval decision. Andrx is providing documentation to address this request.

Andrx has decided that it will not market any strength of generic Tiazac until this issue is resolved and until the district court rules on the underlying patent infringement issues. The company believes these issues will be resolved within the next 60 days.

*See id.* at Ex. 5.

● First Union Securities, Inc. reported that "ADRX disclosed that FDA has requested additional information on selected dosage strengths of its generic Tiazac product. FDA also indicated several dosage strengths are already approvable, pending expiration of the stay approval.

ADRX has responded to FDA's request."

*See id.* at Ex. 6.

● The *Business Wire* issued an article which stated in relevant part:

In anticipation of the court authorized approval date, FDA has for the first time advised Andrx that, while certain dosage strengths of Andrx's generic version of Tiazac are ready for approval once the statutory stay is lifted, FDA needs additional information relating to the other strengths in order to make its approval determination. Andrx is providing documentation to address FDA's requests. Given that, within the next 60 days, Andrx anticipates receiving a district court ruling on its motion for summary judgment of the underlying patent infringement issues and FDA approval of all strengths of its product, Andrx at this point does not intend to commence marketing any strength of its generic Tiazac product until both of these matters are resolved.

*See id.* at Ex. 7.

● The Buckingham Research Group reported: "Andrx Group has confirmed that the Florida District Court extended the stay on generic Tiazac (hypertension) until October 1, 2001 (Monday). Once again, we expect the

Company will likely receive FDA approval shortly. The FDA did note that Andrx needs to provide more information to the FDA on certain strengths of generic Tiazac, while others are ready for approval after the stay is lifted."

*See id.* at Ex. 8.

• Credit Suisse First Boston Corporation issued a report that stated in relevant part:

Andrx stated that the Federal District Court in Florida denied Biovail's ... motion to stay its September 19th order that shortened the Hatch–Waxman waiting period for Andrx's generic Tiazac product.

The court did, however, move the stay expiration date to Oct. 1 from September 27 and agree to allow immediate appellate review of various rulings, including that which reduced the waiting period, and Andrx's other argument that it should not have to re-qualify its application once a tentative approval has been granted. This process could take from a few days to a few weeks. [ . . . ]

We believe that Andrx should eventually win this argument, but are concerned more about the FDA's request to review various dosage strengths of its product.

*See id.* at Ex. 9.

At the end of the day on September 28, 2001, Andrx's stock price closed at $64.92.[4] *See* Joint Report at 4.

A week later, on October 5, 2001, an article in *Generic Line* cited Ken Howling,

a spokesperson for Biovail, as saying that "data submitted to the FDA concerning the performance of Andrx' product show that Andrx' drug is not bioequivalent with Tiazac. Thus, the agency should not be permitted to approve Andrx' product in its current form." *See id.* at Ex. 11. The article repeated that "[i]n anticipation of the appeals court upholding the Florida ruling, the FDA advised Andrx that, while certain dosage strengths of Andrx' generic are ready for approval, more information relating to other strengths are needed before market clearance is granted." *Id.*

Then, in mid-December, the *Dow Jones News Service* issued a report commenting on the status of Taztia. The report stated in relevant part:

Andrx Group (ADRX) and Biovail Corp. (BVF) will square off Friday in federal appeals court over Biovail's attempts to delay a generic version of its heart drug from hitting the market.

But the biggest hurdle to Andrx's drive to market its generic is still the Food and Drug Administration, which has yet to grant final approval to the generic.

Biovail wants the appellate court to overturn a ruling that shortened a 30–month waiting period where the FDA is barred from approving a generic version of Biovail's Tiazac medicine.

Had the case not been appealed, the lower court's decision would have allowed the FDA to act on Andrx's filing two months ago.

Andrx, of Fort Lauderdale, Fla., asserts the lower court acted properly under the Hatch–Waxman law, which was designed to accelerate the approval of generic drugs.

---

4. At the end of the following trading day, namely October 1, 2001, Andrx's stock price closed at $69.00. *See* Joint Report at 4.

Some analysts expect Andrx to prevail, but should such a legal victory occur, it does not translate into an immediate approval of generic Tiazac or entry into Tiazac's $200 million-plus franchise. That's because the FDA still needs to decide whether the generic is the bioequivalent of the branded version.

\*   \*   \*   \*   \*   \*

If the court upholds the lower decision shortening the 30–month waiting period, the FDA then must decide whether Andrx's generic is the bioequivalent of Tiazac. The FDA had advised Andrx that some of its dosage strengths are ready for approval while other dosage strengths need additional information. Andrx said it has supplied the data. Biovail has also made submissions about bioequivalency to the agency.

"Regardless of what happens tomorrow, the reality is that Andrx does not have a product that is stable, can be approved and released to the public," said [Biovail's general counsel Kenneth] Cancellara.

*Id.* at Ex. 12.

On January 2, 2002, attorneys on behalf of Biovail filed a Citizen's Petition with the FDA requesting that the FDA refuse to approve Andrx's ANDA petition.[5] *See id.* at Ex. 13. The Citizen's Report stated in relevant part:

In light of the stability failure, this product clearly could not serve as a basis for approving the ANDA. Nevertheless, Andrx supplied this deficient product to Biovail as representative of the product that Andrx intended to market and which it alleged did not infringe any of Biovail's patents....

\*   \*   \*   \*   \*   \*

Based on information in the public domain, it is apparent that Andrx's ANDA has been amended at least 12 times since the application was originally submitted: the ANDA amendments noted by the Federal Circuit and at least one additional amendment. In light of the Court of Appeal's decision and additional information that Biovail has provided to FDA, the product that Andrx intends to market is not the same as the product for which it made its original patent certification. Therefore, Andrx's ANDA can not be approved until a new, "accurate" patent certification has been submitted to reflect the changes that have been made to the generic product for which Andrx is seeking approval.

*Id.*[6]; Second Amended Complaint at 14–15. On January 2, 2002, Andrx's stock price closed at $70.92 per share. *See* Second Amended Complaint at 15.

A week later, on January 9, 2002, Andrx's stock price opened at $64.50 per share. *See* Joint Report at 4. That same day, the *Dow Jones News Service* issued an article which stated in relevant part:

[Biovail's Kenneth] Cancellara noted that Andrx's product, which Biovail submits isn't bioequivalent to Tiazac, can't be marketed because the FDA has yet to grant final approval. "We're at a loss to see how consumers are being deprived a lower-cost generic version of

---

**5.** The Citizen's Petition is a publicly available document. *See* Motion at 15 n. 8.

**6.** On January 8, 2002, *Reuters News* reported Biovail's general counsel Kenneth Cancellara as saying that the "Andrx generic alternative is not ready for the market." *See* Motion at Ex. 14.

our product when there isn't (another) approved product out there," he said.

But Andrx's Hahn said his product has twice received tentative approval from the FDA. "Had (Biovail) not listed this patent in the Orange Book, we believe that we would have received final approval," he said.

*See* Motion at Ex. 15. Andrx's stock price closed at $63.26 at the end of the day on January 9, 2002. *See* Joint Report at 4.

On January 18, 2002, *Reuters News* reported that "a law firm filed a 'citizen's petition' with the FDA on behalf of Biovail earlier this month arguing that amendments to Andrx's application for generic approval should require the firm to refile its entire application. That move could cause another delay of up to 30 months." [7] *See* Motion at Ex. 17.

On February 7, 2002, a Lazard Freres & Co. LLC Analyst Report stated: "Andrx has yet to receive the FDA's final assessment of Biovail's claim that certain strengths of Andrx's generic Tiazac are not bioequivalent. This also clouds the timing of a potential launch." *Id.* at 19. On February 19, 2002, the *National Post* quoted Cory Davis, an analyst at J.P. Morgan H & Q as saying "we still do not expect Andrx' generic version on the market any earlier than mid-summer as it still needs U.S. Food and Drug Administration approval." *Id.* at Ex. 20.

The following day, on February 20, 2002, Andrx's stock price closed at $42.53 per share. *See* Joint Report at 5. Then, on February 21, 2002, Andrx issued two press releases. *See id.* at 4. The first press release, which was issued before the market opened, stated in relevant part:

[Andrx and Biovail] today announced that they have entered into a binding Letter Agreement, settling with prejudice all pending litigation and disputes between the two companies relating to Biovail's Cardizem(R) CD and Tiazac(R) and Andrx's generic versions of these products, Cartia XT(TM) and Taztia(TM) XT, respectively.

\* \* \* \* \* \*

Certain issues have been raised by the Food and Drug Administration (FDA) concerning Andrx's generic version of Tiazac(R). Andrx is working with FDA to resolve these issues and anticipates launching Taztia XT upon resolution of these issues.

*See* Motion at Ex. 21; Joint Report at 4; Second Amended Complaint at 17. Later that day, Andrx's stock closed at a price of $42.61 per share. *See* Joint Report at 5. After the close of the market, Andrx issued its second press release, detailing financial results for 2001 and the fourth quarter of 2001, and reporting disappointing, lower-than-expected earnings. *See* Motion at Ex. 23. The following day, on February 22, 2002, Andrx stock opened at $34.86, a drop of $7.75 per share from the prior day's close. *See* Motion at Ex. A, 5.

On March 22, 2002, Plaintiffs filed suit against Andrx and its president Elliot Hahn, alleging that "defendants led investors to believe that the only delay in its sale of Taztia was the resolution of unsettled patent litigation with Biovail." Second Amended Complaint at 2. Specifically, Plaintiffs rely on the following statement by Mr. Hahn, as reported in the *Dow Jones News Service* on January 9, 2002:

---

7. On January 19, 2002, the *South Florida Sun–Sentinel* issued an article containing identical language. *See* Motion at Ex. 18.

"Had (Biovail) not listed this patent [for Tiazac] in the Orange Book, we believe that we would have received final approval." *See id.* at 16. According to Plaintiffs, that statement was "false and misleading [because] [e]ven if Biovail had not listed Tiazac in the Orange Book, Andrx remained unable to produce a stable version of Taztia and therefore could not obtain final FDA approval or market the drug." *Id.* at 16. Plaintiffs allege in their Second Amended Complaint that the truth was only revealed on February 21, 2002, when Andrx announced in its press release that the FDA had raised certain issues concerning Taztia. *See* Second Amended Complaint at 17 ("Certain issues have been raised by the Food and Drug Administration (FDA) concerning Andrx's generic version of Tiazac(R). Andrx is working with FDA to resolve these issues and anticipates launching Taztia upon resolution of these issues."). According to Plaintiffs, the revelation that the FDA had raised "certain issues" concerning Tiazac was "harsh," causing Andrx's stock price to drop "from $42.61 per share on February 21, 2002 to $34.96 per share on February 22, 2002."[8] Second Amended Complaint at 17.

## SUMMARY JUDGMENT STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598; *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997) (citing *Adickes* ).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings, after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). *See also Anderson v. Liberty*

---

8. Andrx's stock price closed at $42.61 per share on February 21, 2002 and at $34.96 per share on February 22, 2002. *See* Joint Report at 5.

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## LEGAL ANALYSIS

Defendants have moved for summary judgment on two separate grounds. First, Defendants argue that the market was fully aware before and during the class period that the FDA had raised certain issues concerning Taztia and accordingly, pursuant to "truth on the market" doctrine, Plaintiffs' claim is barred. *See* Motion at 2–3, 8–17. Second, Defendants argue that the statement by Mr. Hahn as reported by the *Dow Jones News Service* on January 9, 2002 had no material impact on Andrx's stock price and was not the proximate cause of any losses suffered by Plaintiffs. *See* Motion at 3, 17–26. For the reasons that follow, the undersigned finds that Defendants are entitled to summary judgment pursuant to the truth on the market doctrine. As a result, the Court will not discuss the other argument raised in Defendants' summary judgment motion.

Plaintiffs have stated claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder (Count I), and section 20(a) of the Act (Count II). *See* Second Amended Complaint at 23, 25. To succeed on their Section 10b claim, Plaintiffs must establish "(1) a false statement or omission of material fact (2) made with scienter (3) upon which the plaintiff[s] justifiably relied (4) that proximately caused the plaintiff[s'] injury." *Robbins v. Kroger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997) (citing *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989)).

In an attempt to satisfy the reliance element, Plaintiffs have pled their claim based upon a fraud on the market theory. *See* Second Amended Complaint at ¶ 78 ("As a result of the dissemination of the false and misleading statement[ ] set forth above, the market price of Andrx common stock was artificially inflated during the Class Period. In ignorance of the false and misleading nature of the statement[ ] described above ... plaintiffs and the other members of the Class *relied, to their detriment,* on the integrity of the market price of the stock in purchasing Andrx common stock.") (emphasis added). The controlling case on the fraud on the market presumption of reliance is *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In *Basic,* the Court accepted the hypothesis that in an open and developed securities market, the price of a security reflects the appropriate syn-

thesis of all relevant information regarding the security, including any material misrepresentation. *Id.* at 241, 108 S.Ct. 978. Thus, misleading statements will defraud purchasers of securities even if the purchasers do not rely directly on the misstatements. *See id.* As a result, the Court held that "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id.* at 247, 108 S.Ct. 978; *see also, e.g., Kaplan v. Rose,* 49 F.3d 1363, 1376 (9th Cir.1994) (describing the fraud on the market theory); *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113–1115 (9th Cir.1989) (same); *Stepak v. Aetna Life and Cas. Co.,* 1994 WL 858045 *7–8 (D.Conn.1994) (same); *In re Seagate Technology II Sec. Litig.,* 802 F.Supp. 271, 274 (N.D.Cal.1992) (same).

▪ As stated earlier, Defendants argue that they are entitled to summary judgment because Plaintiffs' claim is barred by the "truth on the market" doctrine. *See* Motion at 8–17. The truth on the market doctrine is a corollary to the fraud on the market doctrine, pursuant to which "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 167 (2d Cir.2000) (citing *Provenz v. Miller,* 102 F.3d 1478, 1492 (9th Cir.1996)); *Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc.,* 3 F.3d 208, 213–14 (7th Cir.1993); *cf. Rodman v. Grant Found.,* 608 F.2d 64, 70 (2d Cir.1979) ("In determining whether [proxy statement] constituted full and adequate disclosure, the district court properly took into account information already in the public domain and facts known or reasonably available to the shareholders."). "A defendant may rebut the presumption that its misrepresentations have affected the market price of its stock by showing that the truth of the matter was already known." *Ganino,* 228 F.3d at 167; *see also Provenz,* 102 F.3d at 1492 n. 4 ("Under this doctrine, a defendant can escape liability for a false statement-or one that reveals less than the full truth-by showing that the market was not affected by the misrepresentation because the truth of the matter was known already and had been factored into market prices.") (citation omitted); *cf. Basic,* 485 U.S. at 248, 108 S.Ct. 978 (presumption of reliance in a fraud-on-the-market case may be rebutted by proving that "the 'market makers' were privy to the truth"). However, before the truth on the market doctrine can be applied, the Defendants must show that "the information that was withheld or misrepresented was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations." *Provenz,* 102 F.3d at 1492–93 (internal quotations omitted).

▪ In applying the truth on the market doctrine to the record in the instant case, the undersigned has carefully considered the arguments made by both sides of the controversy. This task, however, has been complicated by the fact that the Plaintiffs have made an effort in their Response to recast their claim. In their Second Amended Complaint, Plaintiffs allege that Mr. Hahn's January 9, 2002 statement, namely that "[h]ad (Biovail) not listed this patent [for Tiazac] in the Orange Book, we believe that we would have received final approval," was misleading because it "led investors to believe that the

only delay in its sale of Taztia was the resolution of unsettled patent litigation with Biovail." Second Amended Complaint at 2, 16. According to the Second Amended Complaint, the truth was revealed on February 21, 2002 when, as reported in the *Business Wire*, Andrx announced that it had settled litigation with Biovail and that "[c]ertain issues ha[d] been raised by the Food and Drug Administration (FDA) concerning Andrx's generic version of Tiazac." *Id.* at 17. In contrast, in their Response, Plaintiffs argue that the Defendants misled the market by downplaying the approval problems that Andrx was facing with the FDA and that Andrx concealed a pervasive problem with developing Taztia. *See* Response at 5, 7. The undersigned will not entertain Plaintiffs' new theory raised for the first time in response to Defendants' motion for summary judgment as it is not properly before the Court. *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990) ("As the district court correctly noted, this claim was not raised in [the plaintiff's] second amended complaint, but, rather, was raised in response to the defendants' motions for summary judgment, and, as such, were not properly before the court."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Colovos v. Owens–Corning Fiberglass Corp.*, 1995 WL 609115, *9 (N.D.Ill.1995) ("There must be a point at which a plaintiff makes a commitment to the theory of its case. Even the liberal pleading requirements of the federal rules do not permit plaintiffs to wait until the last minute to ascertain and refine theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as judicial resources ... and would unfairly surprise defendants, requiring the court to grant further time for discovery and continuances. Consistently with this reasoning, courts have refused to consider theories that a plaintiff asserts in response to a defendant's motion for summary judgment when the plaintiff failed to assert those theories first in its complaint.") (internal citations omitted).[9] Therefore, the Court will consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law" with regards to Plaintiffs' theory of liability as pled in the Second Amended Complaint. Fed. R.Civ.P. 56.

■ In so doing, the Court agrees with the Defendants that no reasonable jury could find that the statement by Mr. Hahn could have led investors to believe that the delay in the launch of Taztia was caused solely by the ongoing patent litigation with Biovail. The undisputed facts, consisting of the numerous analyst reports and press releases quoted at pages three through ten, *supra,* and discussed below, establish, as a matter of law that the market was repeatedly advised that the launch of Taztia could be delayed by issues other than the Biovail litigation, particularly by the FDA's approval of Taztia as the bioequivalent of Tiazac and that, therefore, Andrx has conclusively rebutted the presumption of reliance. *See, e.g., In re Apple Comput-*

9. This case has been pending since March 2002, and the deadline for filing amendments expired on July 31, 2003.

er Sec. Litig., 886 F.2d 1109, 1116 (9th Cir.1989); *Steiner v. Tektronix, Inc.*, 817 F.Supp. 867, 880 (D.Or.1992); *Padnes v. Scios Nova Inc.*, 1996 WL 539711 *7 (N.D.Cal.1996).

Information regarding possible delays due to FDA concerns was again made available to the market on October 4, 2001, when a Credit Suisse First Boston Analyst report informed the investing public that "Andrx now intends to refrain from launching generic Tiazac until *all* legal and *regulatory* matters are resolved." *Id.* at Ex. 10 (emphasis added). FDA concerns were again emphasized to the public on October 5, 2001 when Biovail's spokesperson Den Howling was cited in a *Generic Line* article as saying that "data submitted to the FDA concerning the performance of Andrx' product show that Andrx' drug is not bioequivalent with Tiazac." *Id.* at Ex. 11.

Furthermore, in mid-December 2001, the market was reminded that issues other than the Biovail litigation might delay the launch of Taztia. Indeed, the market was again advised on December 13, 2001 by a *Dow Jones News Service* report that even if Andrx won its legal battles, it could not market Taztia until it received final regulatory approval from the FDA:

> "But the biggest hurdle to Andrx's drive to market its generic is still the Food and Drug Administration, which has yet to grant final approval to the generic.
>
> \* \* \* \* \* \*
>
> Some analysts expect Andrx to prevail, but should such legal victory occur, it does not translate into an immediate approval of generic Tiazac or entry into Tiazac's $200 million-plus franchise. That's because the FDA still needs to decide whether the generic is the bioequivalent of the branded version.
>
> \* \* \* \* \* \*

[T]he reality is that Andrx does not have a product that is stable, can be approved and released to the public," said [Biovail's general counsel] Cancellara.

*See id.* at Ex. 12. Concerns regarding bioequivalency were further repeated by Biovail in its Citizen Petition of January 2, 2002, which was submitted to the FDA. *See id.* at Ex. 13 ("In light of the stability failure, this product clearly could not serve as a basis for approving an ANDA.").

The market was again reminded that Taztia was not bioequivalent to Tiazac on January 9, 2002, in the very same article that reported the Hahn statement. *See id.* at Ex. 15. In fact, the *Dow Jones News Service* article in which Mr. Hahn made the allegedly misleading statement, also repeated that "Andrx's product, which Biovail submits isn't bioequivalent to Tiazac, can't be marketed because the FDA has yet to grant final approval." *Id.*

In addition to the numerous public disclosures made prior to and simultaneously with the Hahn's January 9, 2002 statement, the market was repeatedly advised throughout the remainder of the Class Period that issues other than the pending patent litigation could delay the final FDA approval of Taztia. For example, *Reuters News* reported on January 18, 2002, as did the *South Florida Sun–Sentinel* on January 19, 2002, that "a law firm filed a 'citizen's petition' with the FDA on behalf of Biovail earlier this month arguing that amendments to Andrx's application for generic approval should require the firm to refile its entire application." *Id.* at Ex. 17–18. The articles cautioned that "[t]hat move could cause another delay of up to 30 months." *Id.* at Ex. 17–18. Additionally, Lazard Feres & Co. LLC issued an analyst report on February 7, 2002, explaining that "Andrx has yet to receive the FDA's

final assessment of Biovail's claim that certain strengths of Andrx's generic Tiazac are not bioequivalent. This also clouds the timing of a potential launch." *Id.* at Ex. 19. Furthermore, an article in the *National Post* on February 19, 2002, quoted Cory Davis, an analyst at J.P. Morgan H & Q as saying that "we still do not expect Andrx' generic version on the market any earlier than mid-summer as it still needs U.S. Food and Drug Administration approval." *Id.* at Ex. 20.

A reasonable fact finder could reach only one conclusion from the totality of these facts: that, in all, the information regarding the delay caused by the FDA's determination of the bioequivalency of Taztia was, in this case, "transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-

balance any misleading impression created by [Mr. Hahn's] one-sided representations."[10] *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir.1996); *see also Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir.1993); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir.1989); *Stepak v. Aetna Life and Cas. Co.*, 1994 WL 858045 *9 (D.Conn.1994); *Steiner v. Tektronix, Inc.*, 817 F.Supp. 867, 880 (D.Or.1992); *Padnes v. Scios Nova Inc.*, 1996 WL 539711 *7 (N.D.Cal.1996). As a result, the undersigned finds that no rational jury could find that the market was misled by Mr. Hahn's statement.[11]

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED.[12] It is further

ORDERED AND ADJUDGED that Defendants' Request for Oral Argument on

10. Plaintiffs rely on *Provenz v. Miller*, 102 F.3d 1478 (9th Cir.1996) and *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989) to support their opposition to Defendants' motion for summary judgment. In *Provenz*, the defendants attempted to use the truth on the market doctrine by relying on generalized analyst reports, rating the stock as "SELL" and advising investors to avoid the stock because "technology revenues are only partially predictable." *Provenz*, 102 F.3d at 1493. The Court found that the reports did not effectively counterbalance defendants' false and misleading statements because there was "no mention in the reports on defendants' allegedly improper revenue recognition practices, negative forecasts, or sales decline with the R6000 line." *Id.* To the contrary, in this case, the analyst reports and news articles were clear that the launch of Taztia could have been delayed by FDA concerns.

Similarly, Plaintiffs' reliance on *Apple* is misplaced. In *Apple*, the Court rejected the defendants' truth on the market defense with regards to certain statements concerning a computer disk-drive named "Twiggy" when "problems [with Twiggy] were not made known to the market by the press or by anyone else." *Apple*, 886 F.2d at 1115. In contrast, possible delays about the release of Taz-

tia were made known to the market in this case. Additionally, the Court in *Apple did* grant summary judgment as to claims involving a computer named "Lisa" because numerous articles identified the risks associated with Lisa, a fact that Plaintiffs ignored in their Response. *See id.* at 1116.

11. With regards to Defendants' argument that Plaintiffs' claim fails because Andrx's stock price did not materially react to the January 9, 2002 and February 21, 2002 statements, the undersigned finds that, at a minimum, a reasonable jury could reach different conclusions at to why Andrx's stock opened at $34.86 on February 22, 2002, down $7.75 per share from the prior day's close.

12. "[I]n the absence of a viable Section 10(b) or Rule 10b–5 claim, an action against controlling individuals pursuant to Section 20(a) cannot be maintained." *In re Smith Gardner Sec. Litig.*, 214 F.Supp.2d 1291, 1307 (S.D.Fla.2002); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396–97 (11th Cir.1996); *Ehlert v. Singer*, 85 F.Supp.2d 1269, 1274 (M.D.Fla. 1999); *Kirwin v. Price Comm. Corp.*, 274 F.Supp.2d 1242, 1249 (M.D.Ala.2003).

Defendants' Motion for Summary Judgment is DENIED AS MOOT.