John W. CRAYTON, Plaintiff,

v.

OCEANIA CRUISES, INC., Defendant.

Case No. 07–23050–CIV.

United States District Court,
S.D. Florida.

March 3, 2009.

Mark David Press, Stabinski & Funt, Miami, FL, John P. Nicoara, Nicoara & Steagall, Peoria, IL, for Plaintiff.

Charles Christopher Tyrell, Gregory R. Elder, Maltzman Foreman PA, Miami, FL, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed on October 14, 2008. (D.E. 65.) Plaintiff filed his Response in opposition to Defendant's Motion on November 24, 2008. (D.E. 75.) Defendant filed its Reply in further support of its Motion on December 4, 2008. (D.E. 80.) As such, the Motion is now ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

### BACKGROUND [1]

By way of background, this case arises out of Plaintiff's trip as a fare-paying passenger aboard Defendant's vessel the *M/S Regatta*. (Def.'s Statement of Undisputed Material Facts ("DSUMF") ¶ 2.) Plaintiff is a seventy-four year old semi-retired engineer who is a habitual cruiser, meaning that he has cruised on one to two cruises per year for the past twelve years. (DSUMF ¶ 1.) As such, he has taken more than sixty rides in tenders [2] over this time period. (DSUMF ¶ 1.) Generally, when a tender is to be used to ferry passengers back and forth from the shore, a platform is opened up on the side of the *M/S Regatta*, the tender pulls up to the platform and is tied to the platform, and two crewmen then assist the passengers with embarking or disembarking the tender. (DSUMF ¶ 4.)

On November 25, 2006, Plaintiff boarded the *M/S Regatta* for a 26 day cruise to the Amazon. (DSUMF ¶ 2.) On November 28, 2006, the *M/S Regatta* anchored off the island of Virgin Gorda, whereupon Plaintiff, along with other passengers, safely boarded a tender to go to shore. (DSUMF ¶¶ 2, 5.) Later, Plaintiff and approximately 100 other passengers were ferried in a tender from Virgin Gorda back to the *M/S Regatta*. (DSUMF ¶ 6.)

When the tender carrying Plaintiff returned to the *M/S Regatta's* tender platform, a crew member aboard the tender left his chair, went to the front of the tender and tied the tender's bow line to the vessel. (DSUMF ¶ 12; Deposition of John W. Crayton, February 27, 2008 ("Crayton Dep. Vol. 2"), 5:16–22; 65:7–9.) After Plaintiff saw this crew member return to his chair, Plaintiff looked to the stern of the tender and noticed that the stern line was not tied to the vessel.

---

1. Defendant has submitted a statement of material facts in support of the instant Motion. To the extent that Plaintiff (the non-movant) controverts the facts alleged by Defendant with evidence, the Court will adopt the facts set forth by Plaintiff. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). To the extent that Plaintiff does not controvert the facts alleged by Defendant and those facts are supported by the record, the Court adopts the facts contained within Defendant's statement. *See* S.D. Fla. L.R. 7.5.D ("All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement . . .").

2. A typical life boat used on a large cruise ship, a tender holds approximately 150 people on a single seating deck. (DSUMF ¶ 3.)

(Crayton Dep. Vol. 2, 5:23–6–10.) Approximately ten minutes later Plaintiff disembarked the tender, but Plaintiff did not look again at the stern of the tender either during this ten minute interval or after he disembarked the tender. (Crayton Dep. Vol. 2, 6:11–24; 65:10–15.) Plaintiff testified that he did not specifically check again to see if the stern line had been tied because his concerns about the stern line were reduced by the fact that other passengers were successfully disembarking the tender. (Crayton Dep. Vol. 2, 65:10–15.) However, another cruise passenger on Plaintiff's tender—Mort Sweetow—testified that he saw a crewmember tie both the tender's bow and stern lines to the vessel before passengers began disembarking the tender. (DSUMF ¶ 13; Deposition of Morton R. Sweetow, September 23, 2008 ("Sweetow Dep."), 19:7–20:4.)

Approximately twelve to twenty people, including Plaintiff's wife, disembarked the tender for the vessel before Plaintiff. (DSUMF ¶ 7.) These twelve to twenty people all followed the procedure specified in the vessel's daily newsletter, which consisted of: (1) standing on the tender next to the platform, (2) allowing the two crewmembers positioned on the platform on either side of them to grab them simultaneously by the hand and the arm on each side, and (3) allowing these crewmembers to direct them to step over to the platform from the tender. (DSUMF ¶ 7.) This disembarkation procedure conformed to the standard used on other cruise lines. (DSUMF ¶ 7.)

When it was Plaintiff's turn to disembark the tender, he got to the top step of the tender, extended his arms, and allowed the crewmembers on either side of him, standing on the platform, to take him by the hand and the upper arm on both his left and right sides. (DSUMF ¶ 8; Deposition of John W. Crayton, February 26, 2008 ("Crayton Dep. Vol. 1"), 89:15–90:9.)

Plaintiff testified that the crewmembers "were in very good position to control my position, motion and so forth." (Crayton Dep. Vol. 1, 90:8–9.) As Plaintiff felt the crewmembers begin to pull his arms, he stepped forward onto the platform with his right foot. (DSUMF ¶ 8.) Plaintiff did not look to see where he was placing his foot; he was just looking at the two crewmembers holding onto his arms. (DSUMF ¶ 11.)

However, once his right foot hit the platform, Plaintiff could feel his right foot slipping on the platform. (DSUMF ¶ 8; Crayton Dep. Vol. 1, 91:3–13.) After his right foot slipped completely off the platform, Plaintiff

> fell down and the two guys holding onto me supported my weight, such that I didn't fall all the way into the water because they did not let go of me, and their great effort, why they pulled me up over the edge of the platform, and then they helped me to stand up and I was able to walk to the staircase where I would go up.

(Crayton Dep. Vol. 1, 94:21–95:2; DSUMF ¶ 10.) Plaintiff suffered an injury in his fall. (Pl.'s Resp. 1.) The crewmembers assisting Plaintiff to disembark the tender never let go of Plaintiff during the entire time that Plaintiff disembarked the tender, including during Plaintiff's fall. (DSUMF ¶ 9); Crayton Dep. Vol. 1, 92:8–12 ("Q: Okay. Were the two men still holding onto you? A: Oh, absolutely. Q: Did they ever let go of you? A: Not until they drug me up over the side.") Plaintiff further stated that he "was very grateful that the crew members were firmly holding onto my arms." (DSUMF ¶ 9.)

Plaintiff filed his Amended Complaint on January 15, 2008 (D.E. 9), alleging that Defendant was negligent in two ways that caused his injury: (1) Defendant's crewmembers failed to adequately hold onto

Plaintiff while transferring him from the tender to the vessel, and (2) Defendant's crewmembers failed to properly secure the tender against the vessel's platform. (Am. Compl. ¶ 11.) In the instant Motion, Defendant moves for the entry of final summary judgment against Plaintiff. (*See* Def.'s Mot. 1.) Defendant claims that there is no genuine issue of material fact that (1) Defendant's crewmembers maintained a strong hold on Plaintiff during the entire time he was disembarking the tender, and (2) Defendant's crewmembers tied the tender to the vessel using both the tender's bow and stern lines.

## *LEGAL STANDARD*

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir.2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

█ If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981).[3] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and

---

**3.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505.

### ANALYSIS

██ It is well established that torts committed on navigable waters, such as the instant action, are governed by admiralty law. *See, e.g., Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir.1990); *Mink ex rel. Insurance Co. of N. Am. v. Genmar Indus.,* 29 F.3d 1543, 1545 (11th Cir.1994). The elements of maritime negligence are essentially the same as those for common law negligence. *See, e.g., Stuart Cay Marina v. M/V Special Delivery,* 510 F.Supp.2d 1063, 1071 (S.D.Fla.2007). Generally, the elements necessary to prove a cause of action for negligence are: (1) a duty recognized by the law requiring a certain standard of conduct for the protection of others against unreasonable risks; (2) breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *See* Prosser & Keaton On Torts § 30 (5th ed. 1984).

██ A shipowner owes to all passengers "the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). In his Amended Complaint, Plaintiff alleges that Defendant breached its duty of care to him in two ways: (1) Defendant's crewmembers failed to adequately hold onto Plaintiff while transferring him from the tender to the vessel, and (2) Defendant's crewmembers failed to properly secure the tender against the vessel's platform. (Am. Compl. ¶ 11.) Defendant argues that neither of these two breach theories is supported by the evidence, and, in fact, the undisputed evidence debunks both of these theories. The Court agrees.

Plaintiff presents no evidence in support of his first theory of breach. Plaintiff does not argue or present any evidence that Defendant's method for transferring passengers onto and off of the tenders—positioning one crewmember on either side of the entry steps to assist the passengers in embarking and disembarking—failed to meet the standard of care. (*See generally* Pl.'s Resp.) Additionally, Plaintiff has failed to produce any evidence that Defendant's crewmembers' transfer of him from the tender during the incident fell below the standard of care in any way. In fact, Plaintiff's own testimony shows otherwise. Plaintiff explained that while transferring him from the tender to the vessel, "the crewmen on either side of me, standing on the platform, each took my hand and an arm on either side of me." (Crayton Dep. Vol. 1, 90:2–4.) Additionally, Plaintiff stated that Defendant's crewmembers never let go of him during the entire time he was disembarking the tender "until they drug me up over the side." (Crayton Dep. Vol. 1, 92:12; *see also* Crayton Dep. Vol. 1, 92:13–17 ("Q: All right. So at all times they were holding onto you, all relevant times they were holding onto you. At all relevant times they had their hands on your wrist and biceps area? A: Yes.").) Finally, Plaintiff admitted that he "was very grateful that the crew members were firmly holding onto my arms." (DSUMF ¶ 9.) As such, the undisputed facts demonstrate that Plaintiff's first theory of negligence fails.

██ The undisputed evidence shows that Plaintiff's second theory of negligence—that Defendant's crewmembers failed to properly secure the tender against the vessel's platform—fails as well. Plaintiff testified that although he saw a crewmember tie the tender's bow line to the vessel, he never saw anyone tie the tender's stern line to the vessel; but Plain-

tiff admitted that he did not look to the stern of the tender in the ten minutes before he disembarked, while he disembarked, or after he disembarked, which leaves open the distinct possibility that the tender's stern line was tied to the vessel within the ten minutes before Plaintiff disembarked the vessel. Additionally, a fellow passenger—Mort Sweetow—who exited Plaintiff's tender after Plaintiff's fall testified that he saw both the bow and stern lines of the tender tied to the vessel prior to the beginning of the passenger disembarkation process. Plaintiff did not offer any evidence to challenge Mr. Sweetow's testimony, arguing only that such testimony does not establish that the stern line was secured to the vessel at the time Plaintiff attempt to disembark the tender. (*See* Pl.'s Resp. 6–7.) However, Mr. Sweetow's testimony shifted the burden to Plaintiff to come forward with some contrary evidence and Plaintiff has failed to do so. Thus, in the absence of evidence that the tender's stern line became untied during the disembarkation process, the Court finds that the undisputed evidence demonstrates that Plaintiff's second theory of negligence fails as well as a matter of law.

 In his Response, Plaintiff also presents evidence that he argues would tend to show that Defendant was negligent by (1) having Plaintiff disembark the tender during unsafe weather conditions and (2) having Plaintiff disembark the tender at a time when the tender separated from the ship creating a large gap between the tender and the ship. However, Plaintiff does not allege either of these theories of negligence in his Amended Complaint or in any filed pleading. As such, the Court will not entertain Plaintiff's alternate theories of negligence that were raised for the first time in Plaintiff's Response to Defendant's Motion for Summary Judgment as they are not properly before the Court. *See, e.g., In re Andrx Corp., Inc.,* 296

F.Supp.2d 1356, 1367 (S.D.Fla.2003) (citations omitted); *Pycsa Panama, S.A. v. Tensar Earth Technologies, Inc.,* 2008 WL 1775409 at *33 (S.D.Fla.2008) (citations omitted); *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.,* 336 F.Supp.2d 1239, 1280 (S.D.Fla.2004); *Mahgoub v. Miami Dade Community College,* —— Fed.Appx. ——, ——, 2006 WL 952278 at *2 (11th Cir.2006); *see also Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990) ("As the district court correctly noted, this claim was not raised in [the plaintiff's] second amended complaint, but, rather, was raised in response to the defendants' motions for summary judgment, and, as such, was not properly before the court."). It is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (D.E. 65) is GRANTED and this case is DISMISSED WITH PREJUDICE.